```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


TRIVIC, INC.                                  CIVIL ACTION

VERSUS                                        NO: 07-3104

UNITED STATES FIDELITY AND                    SECTION: "R"(5)
GUARANTY CO. AND ST. PAUL
TRAVELERS COMPANIES
```

**ORDER AND REASONS**

Before the Court is plaintiff's motion to remand.  For the following reasons, the Court GRANTS plaintiff's motion.


**I.   BACKGROUND**

Plaintiff sued United States Fidelity and Guaranty Co. and St. Paul Travelers Companies, its commercial property insurers, and Jay Oppenheim and Eagan Insurance Agency, Inc., its insurance agents, after plaintiff's restaurant supply business suffered damage as a result of Hurricane Katrina.  Plaintiff's insurance agents procured the policy for plaintiff.  Plaintiff's policy covered damage to physical property as well as coverage customarily referred to as "business interruption insurance."

The effective dates of the policy were September 12, 2004 through September 12, 2005. As a result of damage from winds and flooding associated with Hurricane Katrina, Trivic discontinued business operations.

United States Fidelity and Guaranty Co. and The St. Paul Travelers Companies[1], foreign insurers with neither citizenship nor a principal place of business in Louisiana, contend that Oppenheim and Eagan Insurance Agency, both domiciled in Louisiana, are improperly joined because there is no reasonable basis on which plaintiff can state a claim under Louisiana law against them. Defendants assert that Trivic has failed to establish a cause of action against the insurance agents and that even if plaintiff has a cause of action, it is perempted by the terms of La. Rev. Stat. § 9:5606.

The insurance providers lack citizenship or a principal place of business in Louisiana. The insurance agents are citizens of Louisiana. As such, the parties are not completely diverse, a requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332. *See McLaughlin v. Mississippi Power Co.*,

---

[1] Defendant United States Fidelity and Guaranty Co. states in its notice of removal that The St. Paul Travelers Companies, Inc. is not properly named in this action because it did not issue insurance to plaintiff. The St. Paul Travelers Companies presence in this action does not affect this Court's analysis of plaintiff's motion to remand.

376 F.3d 344, 353 (5th Cir. 2004).  Plaintiff filed its claim against United States Fidelity and Guaranty Co. and Travelers in Louisiana state court on August 25, 2006 and filed its first supplemental and amending petition on April 19, 2007.  Defendants then removed the case on June 1, 2007.  Plaintiff filed a motion to remand this matter to state court on June 29, 2007.  Defendants assert that federal jurisdiction is proper under diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the nondiverse insurance agent defendants have been joined improperly.

## II.   LEGAL STANDARDS

### A.   Applying Louisiana Law

Because jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the Court.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the sources of law are legislation and custom.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).  These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."

*Id.* (*quoting* La. Civ. Code art. 1*).* In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* (*quoting Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d 169, 174 (5th Cir. 1999)). To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

**B.   Removal**

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D. La. 1995). Though the Court must remand the

case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal.  28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

### C. Improper Joinder

When a nondiverse party is properly joined as a defendant, a defendant may not remove under section 1332.  However, a defendant may remove by showing that the nondiverse party was improperly joined.  *Smallwood v. Il. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  Because the doctrine is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one.  *Id*.  Improper joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant.[2]  *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).  In *Ross*, the Fifth Circuit clarified the standard for finding improper joinder when a defendant alleges that

---

[2] The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder."  *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).  However, the term "fraudulent joinder" is still used in many Fifth Circuit cases, causing no shortage of confusion.

plaintiff is unable to state a claim against the nondiverse defendant. *Id.* at 462-63. The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant. *Id. (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). This means that there must be a reasonable possibility of recovery, not merely a theoretical one. *Id.* The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Id.* (*citing Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003); *see also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. In addition, the Court must resolve all ambiguities of state law in favor of the nonremoving party. *Id.*

**III. DISCUSSION**

**A.  Cause of Action for Failure to Procure and for Negligent Misrepresentation**

Plaintiff has alleged causes of action against its insurance agents for failure to procure requested coverage and for negligent misrepresentation. Plaintiff asserts that in early September of 2004, plaintiff's representative indicated to Oppenheim that plaintiff wanted business interruption insurance that would cover risks associated with lost income and additional expenses resulting from an interruption of plaintiff's business operations. Plaintiff further alleges that the agent assured this representative that plaintiff's policy would cover those risks, and would include payment of all expenses and lost income plaintiff might sustain until it resumed normal business operations. Plaintiff contends that Trivic renewed the insurance policy, with the expectation that the agents had met its requests for full coverage for damage to its property and business operations.

It is well established under Louisiana law that a plaintiff may recover for his insurance agent's failure to procure requested insurance coverage. The Louisiana Supreme Court has held: "An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable

diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested coverage." *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730 (La. 1973). An insurance agent is more than a "mere order taker" for the insured. *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 230 (5th Cir. 1990) (quoting *Durham v. McFarland, Gay and Clay Inc.*, 527 So.2d 403, 405 (La. Ct. App. 1988)). Citing *Karam*, the Fifth Circuit stated:

> In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured.

*Offshore Prod. Contractors*, 910 F.2d at 229.

Broadly construing plaintiff's petition in its favor, the Court concludes that there is a reasonable probability that plaintiff can satisfy each of these three elements. As plaintiff's insurance agent of record, Oppenheim undoubtedly entered into an agreement with plaintiff's representative to procure Trivic's insurance coverage. When an agent has reason to know the risks against which an insured wants protection and has

experience with the types of coverage available in a particular market, "we must construe an undertaking to procure insurance as an agreement by the agent to provide coverage for the client's specific concerns." *Id.* (citing to several Louisiana appellate court decisions). Plaintiff, through the affidavit of its representative, Robert F. Barback, Sr., alleges the following:

> He made Jay Oppenheim and Eagan Insurance Agency, Inc. aware that Trivic desired the maximum amount of insurance coverage to protects its assets and to ensure that it would have insurance in place to pay its bills and lost income in the event of an interruption of its business operations.

(R. Doc. 6-4, Barback, Sr. Aff. at ¶ 6). Further, plaintiff alleges that defendant agents agreed and represented that the policy provided the requested coverage:

> Oppenheim specifically assured him that, in the event Trivic could not proceed with normal business operations because of damage to its property, the business interruption insurance coverage would pay all of the expenses and lost income that Trivic might sustain until it resumed normal business operations.

*Id.*

That defendants dispute what occurred at the meeting in September 2004 only raises issues of fact about the merits of plaintiff's claim. Defendants' evidence does not alter the Court's conclusion that there is an arguably reasonable basis to predict that, if the allegations are true, Louisiana law might hold Oppenheim and/or Eagan Insurance Agency liable for failure

to procure the requested insurance.  As Judge Edith Jones wrote in *Offshore Production Contractors*, *supra*, "Where an insurance broker has experience in a particular field, that broker should possess reasonable knowledge of the general types of policies available, understand their different terms, and explore the specific coverage available in the area in which the client seeks to be protected."  *Id.* at 231.  Thus, plaintiff has made sufficient allegations to reasonably predict that a Louisiana court might find Oppenheim and/or Eagan Insurance Agency liable to plaintiff under Louisiana law.  *See Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461-63 (5th Cir. 2003).

Plaintiff further alleges that the insurance agent defendants are liable for negligent misrepresentation.  The Court finds that, based on the statements in plaintiff's state court petitions and in plaintiff's affidavits, plaintiff may have a reasonable possibility of recovery against the agents under Louisiana law.  Specifically, plaintiff avers that the agents negligently misrepresented "the scope and extent of coverage under the business interruption insurance, as well as the rights and relief to which Petitioner would be entitled under the policy in the event of a loss from a hurricane."  (R. Doc. 1-2, at ¶ 11(f)).  Here, plaintiff alleges that:

> The representations made by Jay Oppenheim and Eagan

> Insurance Agency in that September 2004 meeting warranted the belief that Trivic was properly and adequately insured for the desired coverage, and in reliance on such, the insurance policy containing the business interruption coverage was renewed.

(R. Doc. 6-4, Barback, Sr. Aff. at ¶ 6). Louisiana recognizes a cause of action for negligent misrepresentation leading to pecuniary loss when (1) the defendant owed a duty to supply correct information, (2) the defendant breached that duty, and (3) the plaintiff suffered damages resulting from justifiable reliance on the misrepresentation. *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 624 n. 38 (5th Cir. 1993); *Chiarella v. Sprint Spectrum, LLP*, 921 So.2d 106, 123 (La. Ct. App. 2005). Plaintiff has properly alleged a cause of action for negligent misrepresentation. Insurance agents have a duty to supply their customers with correct information, and they may be liable for negligent misrepresentation when they provide incorrect information and an insured is thereby damaged. *See, e.g., Venture Assocs. Inc. of La. v. Trans. Underwriters of La.*, 634 So. 2d 4, 6-7 (La. Ct. App. 1994).

**B.   Peremption**

Defendants contend that even if the agents owed a duty to the plaintiff, any claim arising from that duty is perempted under La. Rev. Stat. § 9:5606, a statute establishing peremptive periods for contract and tort actions brought against insurance

11

agents.  The statute provides as follows:

> No action for damages against any insurance agent . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat. § 9:5606.

Under the express terms of the statute, regardless of whether plaintiff sued within one year of discovering its cause of action, the claim is still perempted if plaintiff does not bring it within three years of the act, omission, or neglect. La. Rev. Stat. § 9:5606.  Further, peremptive statutes are not subject to suspension.  *Reeder v. North*, 701 So. 2d 1291 (La. 1997).

Subsequent renewals of insurance policies do not restart the peremptive period on torts committed at the time of initial purchase.  *See Biggers v. Allstate Ins. Co.*, 886 So. 2d 1179, 1182-83 (La. Ct. App. 2004); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So. 2d 377, 382-83 (La. Ct. App. 2003); *see also Bordelon v. The Indep. Order of Foresters*, 2005 WL 3543815 at *3 (E.D. La. 2005).  Renewals can, however, restart the prescriptive

basis when the "complained of conduct ... consist[s] of separate and distinct acts, each of which gives rise to immediately apparent damages." *Biggers*, 886 So. 2d at 1182.  The Court must inquire into whether the actions of the insurance agents at the time of renewal in September 2004 constituted an act separate from the initial policy procurement in 1999.  *Fidelity Homestead Ass'n v. Hanover Ins. Co.*, 458 F. Supp. 2d 276, 280 (E.D. La. 2006).

Based on the allegations set forth in plaintiff's state court petition, the Court finds that plaintiff's claims against Oppenheim and Eagan Insurance Agency are not perempted. Defendants argue that the agents procured the insurance policy in 1999, subsequent renewals did not restart the peremptive period, and plaintiff failed to file suit within three years of the alleged act, omission, or neglect.  Although the facts are disputed, plaintiff avers that Oppenheim made substantive misrepresentations at the September 2004 meeting upon which Trivic relied in renewing the policy.  Plaintiff has sufficiently alleged that these misrepresentations constituted an act separate from the initial policy procurement in 1999.  There is a reasonable possibility that a Louisiana court would find that the peremptive period therefore began in September 2004.

Defendants argue that even if September 2004 is when the

peremptive period began, once the insurance companies issued the policy, plaintiff either knew or should have known of its policy limits and coverage terms.  Because plaintiff did not file suit within one year of such knowledge, defendants argue its claims are now perempted.  La. Rev. Stat. § 9:5606.

It is well-established that an insured party is generally responsible for reading his policy, and he is presumed to know its provisions.  *See Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 205 (5th Cir. 1990); *Kiernan v. Commercial Union Ins. Co.*, 271 So. 2d 889, 892 (La. Ct. App. 4th Cir. 1973).  A prescriptive or peremptive period will begin to run when the injured party has constructive knowledge of the facts that would entitle him to bring a suit.  Here, the issue is whether Trivic knew or should have known from the terms of the September 2004 policy that it did not reflect its communicated intention regarding the scope of the business interruption Trivic desired.

The Court cannot conclude that there is no reasonable possibility that Trivic could recover against the insurance agent defendants under state law.  There is a reasonable possibility that a Louisiana court would find that Trivic was not charged with knowledge of a lack of coverage from the terms of the policy before Hurricane Katrina because the policy was arguably ambiguous and Trivic allegedly received contrary representations

from its agent about the scope of coverage.  It is not apparent that a simple reading of the policy would have been enough to put the plaintiff on notice.  Notably, defendants state that plaintiff knew that the policy did not cover flood damage, but defendants have conceded that Trivic did have flood coverage for its accounts receivable and its vehicles under the same policy. Furthermore, the defendants admit that the policy covered loss of business income for three weeks of the Civil Authority closing, despite the flooding in the area and the policy provision that states that this payment is due when the closure is due to property damage caused by "any covered cause of loss."  When these policy provisions are taken together with the misrepresentations the agents allegedly made in September 2004, the Court finds there is an arguably reasonable basis to predict that a Louisiana Court would hold that Trivic was not on notice of its claim simply by reading the policy.

Plaintiff alleges it did not discover the basis of its action until February 2007, when Trivic received two denial letters from the insurance company, stating its position as to the scope of coverage under the policy.  Plaintiff filed suit against the insurance agents on April 19, 2007, which was within one year of the letters from the insurance company and within three years of the material September 2004 meeting.

The Court finds there is an arguably reasonably basis to predict that Louisiana law might hold that Trivic (1) properly alleged causes of action against the insurance agent defendants for failure to procure and/or negligent misrepresentation; and (2) timely filed its action under La. Rev. Stat. § 9:5606. Therefore, defendants have failed to carry their burden of demonstrating that joinder of the nondiverse defendants was improper. The Court thus does not have jurisdiction on the basis of the diversity of the parties. *See* 28 U.S.C. § 1332.

**IV. CONCLUSION**

For the foregoing reasons, plaintiff's motion to remand is GRANTED.

New Orleans, Louisiana, this __6th__ day of September, 2007.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE